UNITED STATES DISTRICT COURT
<u>WESTERN DISTRICT OF NEW YORK</u>

| | |
|---|---|
| MARYJO Y., | § |
| | § |
| Plaintiff, | § |
| | § |
| v. | § Case # 1:20-cv-0040-DB |
| | § |
| COMMISSIONER OF SOCIAL SECURITY, | § MEMORANDUM DECISION |
| | § AND ORDER |
| Defendant. | § |

## INTRODUCTION

Plaintiff Maryjo Y. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner") that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the Act). *See* ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c), and the parties consented to proceed before the undersigned in accordance with a standing order (*see* ECF No. 14).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). *See* ECF Nos. 9, 10. Plaintiff also filed a reply. *See* ECF No. 11. For the reasons set forth below, Plaintiff's motion (ECF No. 9) is **DENIED,** and the Commissioner's motion (ECF No. 11) is **GRANTED.**

## BACKGROUND

Plaintiff protectively filed her DIB application on November 16, 2016, alleging disability beginning March 1, 2007 (the disability onset date) due toICrohn's disease and irritable bowel syndrome ("IBS"). Transcript ("Tr.") 30-31. Plaintiff's application was denied initially on January 18, 2017, after which she requested an administrative hearing. Tr. 63-74. On October 11, 2018, Administrative Law Judge JuanCarlos Hunt (the "ALJ") conducted a video hearing from Alexandria, Virginia. Tr. 15. Plaintiff appeared and testified from West Seneca, New York, and

was represented by Jeanne Murray, an attorney. Tr. 15. At the hearing, Plaintiff amended her alleged onset date to August 11, 2007. *Id.* Beth Crain, an impartial vocational expert ("VE"), also appeared and testified at the hearing. *Id.*

On January 11, 2019, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled. Tr. 15-22. On November 14, 2019, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. The ALJ's January 11, 2019 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Act holds that the Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F. 3d 496, 501 (2d Cir. 1990).

### II. The Sequential Evaluation Process

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ

proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments meeting the durational requirements, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id.* § 404.1509. If not, the ALJ determines the claimant's residual functional capacity, which is the ability to perform physical or mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## ADMINISTRATIVE LAW JUDGE'S FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his January 11, 2019 decision:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2012;

2. The claimant did not engage in substantial gainful activity during the period from her amended alleged onset date of August 11, 2007 through her date last insured of December 31, 2012 (20 CFR 404.1571 et seq.);

3. Through the date last insured, the claimant had the following severe impairments: Crohn's disease and irritable bowel syndrome (20 CFR 404.1520(c));

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526);

5. Through the date last insured, the claimant had the residual functional capacity to perform a full range of light work as defined in 20 CFR 404.1567(b)[1] with the following additional limitations: the claimant frequently could balance, crouch, kneel, crawl, stoop, and climb ramps, stairs, ladders, and scaffolds; the claimant would be off task 10% of the day due to alternating between sitting and standing and/or attention and concentration lapses, and/or the need to use the bathroom; and, the claimant would miss one day of work per month.;

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565);

7. The claimant was born on December 24, 1977 and was 35 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563);

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564);

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not

---

[1] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [the claimant] must have the ability to do substantially all of these activities. If someone can do light work, [the SSA] determine[s] that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

   disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2);

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569a);

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 11, 2007, the alleged onset date, through December 31, 2012, the date last insured (20 CFR 404.1520(g)).

Tr. 15-22.

Accordingly, the ALJ determined that, for a period of disability and disability insurance benefits filed on November 16, 2016, the claimant is not disabled under sections 216(i) and 223(d) of the Social Security Act. through December 31, 2012, the last date insured. Tr. 22.

## **ANALYSIS**

Plaintiff asserts a single point of error. Plaintiff argues that the ALJ's RFC was unsupported by substantial evidence because there was no opinion evidence of record, and thus, the ALJ relied solely on his own lay opinion to come to an RFC. *See* ECF No. 9-1 at 8-15. The Commissioner argues in response that the ALJ's RFC finding is supported by Plaintiff's subjective complaints of pain, and the ALJ was not required to rely on a corresponding medical opinion where there were no gaps in treatment. *See* ECF No. 10-1 at 8-15.

A Commissioner's determination that a claimant is not disabled will be set aside when the factual findings are not supported by "substantial evidence." 42 U.S.C. § 405(g); *see also Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir.2000). Substantial evidence has been interpreted to mean "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The Court may also set aside the Commissioner's decision when it is based upon legal error. *Rosa*, 168 F.3d at 77.

5

The Court has reviewed the complete medical file for the period at issue and finds that the ALJ in this case thoughtfully considered Plaintiff's limitations in light of the complete record and gave her every benefit of the doubt by assessing an RFC based on her subjective complaints. Tr. 18-22. Throughout the relevant period, Plaintiff was noted to be doing well or fairly stable with her condition. Tr. 388, 414, 419, 438, 446, 469. In addition, multiple entries note a peculiar practice of Plaintiff reporting exacerbations two weeks prior to her appointments. *See e.g.*, Tr. 485.

Although Plaintiff claims she was disabled due to Crohn's disease and IBS, less than a year after her alleged disability onset date, she was responding well to Humira (Tr. 460), and her treating gastroenterologist remarked that due to her medication, there was "no evidence of active disease at all" (Tr. 440) and encouraged her to return to the workforce (Tr. 446). In October 2007, Plaintiff reported working as a cook (Tr. 420), and in January 2008, she reported working part time (Tr. 428). Plaintiff's medication was so successful that she admitted at the hearing that it helped her symptoms and that she returned to the workforce, performing two jobs that required greater physical exertion than the ALJ's RFC finding. Tr. 41, 180.

Throughout the period of alleged disability, treating gastroenterologist Michael W. Wood, M.D., ("Dr. Wood") treated Plaintiff's IBS and Crohn's disease. Treatment notes from Dr. Wood in October 2007 show that Plaintiff was "doing much better" treating her Crohn's disease with bi-monthly infusions of Remicade. Tr. 419. She reported a lack of energy, and Dr. Wood encouraged her to start on an exercise program. *Id*.

In November 2007, Plaintiff had an infusion of Remicade and reported no flare-ups in her disease between the bi-monthly infusions, although she had an unrelated bout of pancreatitis that had resolved. Tr. 423. Plaintiff reported moderate abdominal pain in January 2008, but Dr. Wood noted that she was "doing quite a bit better lately" (Tr. 428); her Crohn's "seemed to respond well

6

to Remicade" and she "went back to work part-time" (Tr. 428). The record shows that Plaintiff was working four days per week, six hours per day (or 24 hours per week) as a cook in a restaurant, where she was standing and walking the entire six-hour shift. Tr. 217, 234.

Plaintiff had another Remicade infusion in March 2008 and again reported that she had no flare-ups of Crohn's disease since the previous Remicade infusion in January 2008. Tr. 432. Plaintiff reported increased abdominal pain in April and June 2008, and Dr. Wood increased her dose of Remicade; however, Dr. Wood stated that Plaintiff's abdominal pain was "very unlikely due to active disease." Tr. 438. Dr. Wood performed a colonoscopy, which confirmed that Plaintiff's colon was "normal [], appearing very healthy with no evidence of active disease at all." Tr. 440. Dr. Wood noted that the Remicade infusions were "quite effective." He also stated that Plaintiff should "look into going back to work again, probably in a different type of job." Tr. 446. Dr. Wood also remarked that Plaintiff had "an incredibly low or essentially nonexistent pain and discomfort tolerance level." *Id*. According to Dr. Wood, Plaintiff was "screaming with imagined pain with just inserting tip of the colonoscope." Tr. 440. He stated that it was "always difficult to get a very reliable history from [Plaintiff] as to exactly how much pain she [was] having." Tr. 402.

Thereafter, from June 2008 to October 2008, Plaintiff reported only one flare-up in her Crohn's disease. Tr. 450, 454. After Plaintiff reported having a "couple" of flare-ups in December 2008, Dr. Wood switched her medication from Remicade to Humira, and by June 2009, he noted that Plaintiff's disease was "well controlled still with Humira which clearly she seems to respond to better than the Remicade." Tr. 460. Plaintiff was "doing well" and "stable" on Humira for more than two years with limited complaints. Tr. 468-69. In August 2011, Dr. Wood switched Plaintiff's medication to Cimzia injections every four weeks due to her reports of a flare-up that started earlier that month. Tr. 471. Plaintiff had success with Cimzia throughout the remainder of the period of

7

alleged disability. She admitted at the hearing that she had less doctor visits and was "feeling better" while taking Cimzia. Tr. 41.

Plaintiff seeks remand of this case solely on the basis that the ALJ did not adopt a corresponding medical opinion when assessing the RFC finding. However, the ALJ was not required to rely on a corresponding medical opinion in this straightforward case where there were no gaps in treatment. Notably, Plaintiff does not argue that she cannot work or that she cannot perform jobs within the ALJ's comprehensive RFC finding.

A claimant's RFC is the most she can still do despite her limitations and is assessed based on an evaluation of all relevant evidence in the record. *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996). At the hearing level, the ALJ has the responsibility of assessing the claimant's RFC. *See* 20 C.F.R. § 404.1546(c); SSR 96-5p, 61 Fed. Reg. 34,471-01 (July 2, 1996); *see also* 20 C.F.R. § 404.1527(d)(2) (stating the assessment of a claimant's RFC is reserved for the Commissioner). Determining a claimant's RFC is an issue reserved to the Commissioner, not a medical professional. *See* 20 C.F.R. § 416.927(d)(2) (indicating that "the final responsibility for deciding these issues [including RFC] is reserved to the Commissioner"); *Breinin v. Colvin*, No. 5:14-CV-01166(LEK TWD), 2015 WL 7749318, at *3 (N.D.N.Y. Oct. 15, 2015), *report and recommendation adopted*, 2015 WL 7738047 (N.D.N.Y. Dec. 1, 2015) ("It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.").

Moreover, the ALJ's conclusion need not "perfectly correspond with any of the opinions of medical sources cited in [his] decision," because the ALJ is "entitled to weigh all of the evidence available to make an RFC finding that [i]s consistent with the record as a whole." *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) (citing *Richardson v. Perales*, 402 U.S. 389, 399 (1971) (the

RFC need not correspond to any particular medical opinion; rather, the ALJ weighs and synthesizes all evidence available to render an RFC finding consistent with the record as a whole); *Castle v. Colvin*, No. 1:15-CV-00113 (MAT), 2017 WL 3939362, at *3 (W.D.N.Y. Sept. 8, 2017) (The fact that the ALJ's RFC assessment did not perfectly match a medical opinion is not grounds for remand.).

Furthermore, it is the claimant's burden, not the Commissioner's, to demonstrate the functional limitations she claims. *See* 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating by reference 42 U.S.C. § 423(d)(5)(A)); *Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (it is Plaintiff's burden to establish that she is disabled); *Diaz v. Shalala*, 59 F.3d 307, 315 (2d Cir. 1995) (finding an ALJ can deny benefits based on a lack of evidence on a matter for which the claimant bears the burden of proof); *Lesterhuis v. Colvin*, 805 F.3d 83, 87 (2d Cir. 2015) (citations omitted) ("The claimant bears the ultimate burden of proving [disability] throughout the period for which benefits are sought."); *Parker v. Berryhill*, No. 17-CV-252-FPG, 2018 WL 4111191, at *4 (W.D.N.Y. Aug. 29, 2018) (holding that a plaintiff bears the burden of showing her RFC is more limited than that found by the ALJ) (citations omitted).

In light of this burden, Plaintiff is specifically required to demonstrate the existence of a severe impairment or impairments that resulted in an RFC preventing her from performing substantial gainful activity during the relevant period. *See Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); *see also* 20 C.F.R. § 404.1512. Plaintiff has not met that burden here. As the record establishes, Plaintiff rarely reported significant flare-ups in her disease, and to the extent she

reported abdominal pain, Dr. Wood switched her medications which alleviated her subjective complaints. Plaintiff testified that when she was not having a flare-up she was "very active" and performed rigorous daily activities without assistance. including cooking for her husband and daughters, cleaning the house, doing laundry, bathing and caring for her children, and caring for her three dogs. Tr. 201, 204-06, 212.

Contrary to Plaintiff's argument, the record contained sufficient evidence from which the ALJ could assess Plaintiff's RFC, and the ALJ cited significant evidence to support his finding. First, the ALJ considered the objective test results. For example, the ALJ noted that in June 2008 (less than one year after Plaintiff's alleged disability onset date), Dr. Wood performed a colonoscopy. Tr. 19, 440. Dr. Woods reported that Plaintiff's colon was "normal" and "appear[ed] very healthy with no evidence of active [Crohn's] disease at all." Tr. 440.

Second, the ALJ considered that Dr. Wood regularly remarked that Plaintiff's impairments were well-controlled with medication. Tr. 19, 329 (reporting no abdominal or gastrointestinal issues on Cimzia); Tr. 446 (Remicade is "quite effective" and Plaintiff had "no evidence of active disease at all"); Tr. 460 (Plaintiff's disease was "well controlled" with Humira), 468 (Plaintiff was "doing well on the Humira once weekly"); Tr. 469 (Plaintiff was doing well and "stable" from a Crohn's perspective).

Third, the ALJ considered Dr. Wood's statement that Plaintiff should return to work. Tr. 19, 446. Such advice stands in stark contrast to Plaintiff's allegation that she had disabling functional limitations. To the contrary, the record showed that Plaintiff worked part-time during the period of alleged disability as both a cook and a cleaner, working, at times between 20 to 40 hours per week where she stood and walked up to six hours per shift and performed duties that required greater exertion than the ALJ's RFC finding. Tr. 180, 215-17, 234.

Fourth, the ALJ considered that Plaintiff's complaints of flare-ups were sporadic; she regularly denied relevant symptoms and reported no fatigue, abdominal pain, diarrhea, or weakness. Tr. 20, 308, 312, 318-19, 321-24 (collectively denying abdominal pain, nausea, vomiting, or diarrhea); Tr. 369 (noting that Plaintiff had the "peculiar habit of [only] developing exacerbations a week or two before she was due for an appointment [with Dr. Wood]"); Tr. 432, 445, 450, 454 (collectively reporting only two flare-ups in pain from January 2008 to October 2008 between Remicade infusions). The ALJ also noted that, if Plaintiff reported a flare-up, Dr. Wood offered medication changes that alleviated her symptoms. Tr. 19-20, 360-61, 369, 460, 462, 468-69, 471.

Finally, the ALJ noted that when Plaintiff was not having a flare-up, she had no limitations whatsoever. Tr. 20, 43. Plaintiff admitted she lived an "active life." Tr. 43. She cooked breakfast, lunch, and dinner for her husband and daughters daily; she shopped in stores, cleaned, did laundry, and walked and cared for three pet dogs with no assistance; and she helped her daughters with homework, got them ready for school, and bathed her youngest daughter. Tr. 201, 204-06, 212. Furthermore, despite Plaintiff's success with medication and only sporadic complaints of flare-ups or gastrointestinal symptoms, Dr. Wood stated that Plaintiff had "an incredibly low or essentially nonexistent pain and discomfort tolerance level" (Tr. 440), and "it [was] always difficult to get a very reliable history from [Plaintiff] as to exactly how much pain she [was] having" (Tr. 402).

Plaintiff takes issue with the ALJ's finding that Plaintiff could perform light work with being off-task 10% of the time due to alternating positions or needing to use the bathroom, and she would miss one day of work per month. *See* ECF No. 9-1 at 11 (citing Tr. 18). Plaintiff contends that "10% is just an arbitrary amount the ALJ creates." *See id.* at 12. According to Plaintiff, because this limitation does not precisely correspond to a medical opinion in the record, remand is

11

warranted. *See id*. Plaintiff is wrong as there is evidence in the record to support the ALJ's formulation. Although the RFC must be supported by medical opinions, it is ultimately the ALJ's duty to formulate the RFC after evaluating the opinion evidence, treatment records, and the testimony of the claimant. *See O'Neil v. Colvin*, 2014 WL 5500662, *6 (W.D.N.Y. 2014) ("the ALJ's RFC finding need not track any one medical opinion") (citing *Matta v. Astrue*, 508 F. App'x at 56 ("although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole")).

Plaintiff's reliance on *Cosnyka v. Colvin*, 576 F. App'x 43, 46 (2d Cir. 2014), for a contrary result is misplaced. *See* ECF No. 9-1 at 16. In *Cosnyka*, the ALJ credited an orthopedic examiner's opinion that the claimant would require "regular comfort breaks," which the ALJ translated into a limitation that the claimant would need a break for six minutes out of every hour. 576 F. App'x at 46. The Second Circuit determined that remand was appropriate because nothing in the record, including the medical records or the claimant's testimony, supported the ALJ's conclusion, and indeed some evidence was "to the contrary." *Id*. In this case, by contrast, the RFC formulated by the ALJ is supported by Plaintiff's daily activities, improvement with treatment, and her own testimony. Nothing in the record suggests that Plaintiff is unable to perform light work with the limitations identified by the ALJ.

Based on the foregoing, the ALJ's RFC assessment was based upon a thorough review of the record and was supported by substantial record evidence; accordingly, remand is not warranted. *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) ("[n]one of the clinicians who examined [claimant] indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations[;] [a]lthough there was some conflicting

12

medical evidence, the ALJ's determination that [p]etitioner could perform her previous unskilled work was well supported"). Here, the ALJ considered Plaintiff's subjective complaints of disabling pain, but noted that "her allegations of chronic and debilitating gastrointestinal issues and physical pain are out of proportion with the objective medical evidence." Tr. 20. As the ALJ explained, during multiple examinations, Plaintiff had a normal abdomen with normal bowel sounds and no evidence of complicating symptoms. Tr. 20, 291, 297, 308, 312, 318-19, 321-24. The ALJ also noted that "[i]n contradiction to the claimant's allegations of general musculoskeletal weakness and loss of physical capacity, the claimant consistently exhibited intact muscle strength in her upper and lower extremities, normal neurological functioning, intact sensation and reflexes, and a normal unassisted gait." Tr. 20, 286, 308, 312, 318-19, 321-24. The ALJ also explained that during examinations, Plaintiff "repeatedly denied relevant symptoms such as weakness, fatigue, abdominal pain, and diarrhea." Tr. 20, 291, 297, 308, 312, 318-19, 321-24. Further, the ALJ noted that Plaintiff's subjective claims of hospitalizations during the relevant period were not supported by the record evidence. Tr. 20.

After reviewing the full and complete record, the ALJ gave Plaintiff every benefit of the doubt, finding "at least some evidence of Crohn's disease exacerbation during the relevant period." Tr. 20. The record also reflects that the ALJ considered Plaintiff's allegations of the need to switch positions from standing to sitting, lapses in concentration due to pain/discomfort, as well as reports of frequent bowel movements. *Id*. Plaintiff testified that during flare-ups she would need to go to the bathroom three times per day for 20 minutes. Tr 43. Accordingly, the ALJ limited Plaintiff to light work with additional postural limitations, consistent with her complaints of trouble bending, and stated that "[she] will be off task 10% of the workday and will miss work once a month," which allowed for her need to take bathroom breaks. Tr. 20.

After thoroughly considering the record as a whole, which showed that Plaintiff did well on her medication with only sporadic reports of flare-ups, the ALJ was entitled to make a common-sense RFC determination to account for her subjective complaints of pain. *See Jaeger-Feathers v. Berryhill*, No. 1:17-CV-06350(JJM), 2019 WL 666949, at *4, 2 (W.D.N.Y. Feb. 19, 2019)., No. 1:17-CV-06350(JJM), 2019 WL 666949, at *4, (W.D.N.Y. Feb. 19, 2019) ("When the medical evidence shows only minor physical impairments" an ALJ may assess the RFC using "common sense judgment about functional capacity even without a physician's assessment."). Given that the record repeatedly notes normal or mild findings with respect to Plaintiff's colon, and her treating gastroenterologist encouraged her to return to work, this is a perfect example of such case.

In summary, the record before the ALJ sufficiently documented Plaintiff's ability to perform the requirements of a range of light work. Tr. 18. This was not a complex case. As the ALJ explained, and the record makes clear: (1) Plaintiff improved with medication (Tr. 41, 329, 446, 460, 468, 469); (2) treating gastroenterologist Dr. Wood, explained that a colonoscopy revealed "no evidence of active disease at all" (Tr. 19, 440); (3) Plaintiff frequently reported that she had "no flares" in her disease and that she had no abdominal or gastrointestinal issues (Tr. 20, 312, 318-19, 321, 423, 432, 454); (4) when she was not having a flare-up, Plaintiff did not report any work-related functional limitations; (5) Dr. Wood encouraged Plaintiff to return to the workforce due to her success with treatment (Tr. 19, 446); and (6) Plaintiff worked during the period of alleged disability as both a cook and a cleaner, working between 20 to 40 hours per week at times, where she stood and walked for six hours per shift (Tr. 180, 215-17, 234).

Plaintiff's burden was to show that no reasonable mind could have agreed with the ALJ's conclusions, which she has failed to do. The substantial evidence standard is "a very deferential standard of review – even more so than the 'clearly erroneous' standard," and the Commissioner's

findings of fact must be upheld unless "a reasonable factfinder would *have to conclude* otherwise." *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012) (emphasis in the original). As the Supreme Court explained in *Biestek v. Berryhill*, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high" and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). Although Plaintiff may disagree with the ALJ's characterization of the evidence, "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino v. Barnhart*, 312 F.3d at 588. Here, the Court finds that the ALJ properly considered Plaintiff's subjective complaints and the objective medical evidence, and the Court finds no error.

For all the reasons discussed above, the Court finds that the ALJ properly considered the record as a whole, and his findings are supported by substantial evidence in the record whole. Therefore, the Court finds no error.

## CONCLUSION

Plaintiff's Motion for Judgment on the Pleadings (ECF No. 9) is **DENIED**, and the Commissioner's Motion for Judgment on the Pleadings (ECF No. 10) is **GRANTED**. Plaintiff's Complaint (ECF No. 1) is **DISMISSED WITH PREJUDICE**. The Clerk of Court will enter judgment and close this case.

**IT IS SO ORDERED**.

DON D. BUSH
UNITED STATES MAGISTRATE JUDGE